IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOEL JOHNSON, JR. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: 07-cv-01175 |
| v. | : | Judge Colleen Kollar-Kotelly |
| | : | |
| PENN CAMERA EXCHANGE, INC | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST TO REINSTATE LAWSUIT

Defendant, Penn Camera Exchange, Inc. ("Penn Camera" or "Defendant"), by and through undersigned counsel, hereby files its Opposition to Plaintiff's Request to Reinstate Lawsuit and states:

### Relevant Facts

1.   On June 11, 2008, this Court ordered Plaintiff, Joel Johnson, to file a legal brief explaining why the Court should vacate the dismissal of his Complaint with prejudice and why the settlement agreement should be set aside.  Plaintiff filed his legal brief on June 20, 2008.[1]

2.   On March 20, 2008, the trial court referred this case for mediation to Judge Alan Kay. The parties and their counsel initially met with Judge Kay on April 22, 2008 for mediation. See Declaration of Magistrate Judge Alan Kay at ¶1 (hereinafter "Kay Decl. at ¶ ___.", attached hereto and incorporated herein as Exhibit A.

3.   At the mediation, Mr. Karl Carter, Mr. Johnson's counsel, advised Judge Kay that the parties had previously discussed settlement and generally agreed on most issues.  Kay Decl. at ¶

---

[1] Even liberally construing Mr. Johnson's "legal brief" as we must because he is proceeding *pro se*, the submission on June 20, 2008 hardly fits within this Court's expectation of a legal brief.  It simply provides Plaintiff's unverified version of events and is completely void of legal argument or citation to precedent to support the relief he requests.

1.

4.    Prior to coming to mediation the parties agreed on a sum of money to be paid to the Plaintiff to settle and dismiss the case filed by Plaintiff. Kay Decl. at ¶ 1.

5.    During the mediation, certain conditions in the agreement were discussed at length by the parties and their counsel, in the presence of Judge Kay. The provisions that were discussed related to confidentiality, a neutral reference, and non-disparagement. Kay Decl. at ¶ 1.

6.    At the conclusion of the discussion both parties and counsel agreed to execute the agreement (hereinafter, the "Settlement Agreement" or the "Agreement."). Settlement Agreement and General Release, dated April 22, 2008, and modified by the parties on May 7, 2008, attached hereto as Exhibit B (hereinafter "Settlement Agreement"). Kay Decl. at ¶ 1.

7.    Prior to Mr. Johnson signing the Agreement Judge Kay specifically asked him if he had read the Agreement and did he now understand it and was he signing voluntarily. Kay Decl. at ¶ 1. Mr. Johnson said he was and signed the Agreement in the presence of Judge Kay. *Id.*

8.    Judge Kay retained the original of the Settlement Agreement, made copies for the parties and they left chambers. Kay Decl. at ¶ 1.

9.    Thereafter, Judge Kay advised the trial court that the case had settled and the parties would file the required paperwork within a few days. Kay Decl. at ¶ 1.

10.    After some correspondence between Mr. Johnson and the court, the parties requested a second mediation session. The second mediation session took place with Judge Kay on May 7, 2008. Kay Decl. at ¶ 2.

11.    The concerns of Mr. Johnson were discussed and Mr. Johnson and Mr. Carter asked to be excused briefly and they adjourned to meet privately in a jury room. Kay Decl. at ¶ 4.

12.    They returned to Judge Kay's chambers and Mr. Carter announced that the Plaintiff was

now satisfied with the signed April 22, 2008 Settlement Agreement. Kay Decl. at ¶ 4.

13.     Again, Judge Kay specifically asked Mr. Johnson if he had gone over the Settlement Agreement with his attorney and did he now fully understand the Agreement. Kay Decl. at ¶ 4. He was somewhat hesitant and Judge Kay then asked him if he would like to take some more time to read over the agreement with his attorney. *Id*.

14.     He said he would. Kay Decl. at ¶ 4. Mr. Johnson and Mr. Carter remianed at Judge Kay's conference table in chambers and took whatever time they needed to carefully go over the Agreement. *Id*. Upon reconvening, Mr. Carter said that Mr. Johnson was satisfied with the Agreement as signed with a minor modification. *Id*. There ensued a discussion between Mr. Carter and Ms. Eastman about the clarity of one of the confidentiality provisions. *Id*. It was decided that with a minor change to Paragraph 12 of the Agreement the concerns of the parties would be resolved. *Id*. The additional page on which changes were made and initialed in Paragraph 12 is attached as Exhibit C.

15.     Handwritten changes were made to the Settlement Agreement and both counsel and Mr. Johnson initialed the changes in the presence of Judge Kay. Kay Decl. at ¶ 4. Again, Judge Kay asked Mr. Johnson if he understood the Agreement and was satisfied with the Agreement. *Id*. He, again, responded that he was. *Id*.

16.     As Defendant was about to tender the checks to Mr. Johnson, he indicated he wanted to say something. Kay Decl. at ¶ 5. He stated that he had written an article about discrimination in America which he was planning to publish and it contained his experiences of discrimination and his difficulties with Penn Camera. *Id*. Ms. Eastman expressed her concern that publishing such an article could be violative of the Settlement Agreement. *Id*.

17.     After some further discussion, Judge Kay suggested that a copy of the reference to Penn

Camera in Mr. Johnson's article be sent to Ms. Eastman and she would then make a determination of the import of any statement expressed by Mr. Johnson in reference to the terms in the Settlement Agreement. Kay Decl. at ¶ 5.

18. That parties agreed that Mr. Johnson through Mr. Carter would provide Ms. Eastman with a copy of the article. Kay Decl. at ¶ 5. Ms. Eastman said she would defer tendering the checks until she had read the article. *Id*. The session ended with the understanding that Mr. Carter would send Ms. Eastman a copy of the article promptly. *Id*.

19. Paragraph 9 of the Settlement Agreement entered into by the parties contains the following language:

> Johnson acknowledges and expressly represents and warrants that (i) prior to signing this Agreement he has read the Agreement, understood its terms, and has been represented by legal counsel of his choice; (ii) this Agreement is a compromise freely and voluntarily entered into by him, upon advice of and consultation with his counsel, and without duress, fraud, coercion or compulsion…

Exhibit B, Paragraph 9.

## Legal Analysis

In his filing, Mr. Johnson has simply repeated his allegations against counsel and the Court, but offered no legal basis for this Court to vacate the dismissal and refuse to enforce the settlement agreement freely entered into by both parties. Most of his allegations pre-date both mediation sessions with Judge Alan Kay and therefore, have no relevance in determining whether the Settlement Agreement should be set aside.[2]

Settlement agreements are governed by state contract law. *Weaver v. Bratt*, 421

---

[2] Communications that may have occurred between counsel, and between Mr. Johnson and his counsel before this May 7, 2008 meeting with Judge Kay are irrelevant. The operative fact is that Mr. Johnson agreed to the Settlement Agreement both on April 22, 2008, and a second time on May 7, 2008, after requesting and obtaining the small changes in paragraphs 12 of the Agreement, in meetings with Judge Kay. Other than the changes negotiated by Mr. Johnson, the documents were the same on both dates. Undersigned counsel had no involvement in the discussions between Mr. Johnson and his counsel. Undersigned counsel, of course, denies Mr. Johnson's allegations of improper conduct and will respond to any Office of Bar Counsel complaint as appropriate.

F.Supp.2d 25, 32 (D.D.C. 2006). In the District of Columbia, "[o]ne who signs a contract which he has had an opportunity to read and understand is bound by its provisions." *Patterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962) (agreement enforced even when plaintiff did not actually read it because he did not have his glasses); *see generally Nur v. KFC USA Inc.* 142 F. Supp.2d 48 (D.D.C. 2001) (party responsible to think matter through before signing an agreement) *and Perez v. Goldin*, 360 F.Supp.2d 12 (D.D.C. 2003) (employee who has ample opportunity to read an agreement and signs it is bound by it). In addition, in the District of Columbia, a party's signature on a contract binds that party to the terms of the contract, even if the party is ignorant to the terms of the contract. *Weaver,* 421 F.Supp.2d at 32. Mr. Johnson affirmed that he did read the agreement, and thus, cannot even plead ignorance.

Judge Kay's affidavit makes clear that Mr. Johnson signed the agreement after having at least two opportunities to read the agreement and confer with his counsel about his understanding of its terms and express any concerns. Mr. Johnson's brief is completely void of any reference to the sessions with Judge Kay and therefore, does not allege that he did not read the agreement, did not understand it and did not sign the agreement. Mr. Johnson must not be absolved of his obligation under the agreement. Mr. Johnson's case of buyer's remorse does not give him a legal reason to disavow an agreement that he knowingly and voluntarily entered.

The courts of the District of Columbia have also consistently adhered to the rule that one who signs a contract is obligated to abide by its terms, in the absence of fraud or duress. *Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1110 (D.C. 2002); *see also Bergman v. Parker*, 216 A.2d 581 (D.C. 1966) (mutual assent to a contract is most clearly evidenced by the terms of a signed written agreement). Plaintiff has shown no reason that would justify

5

departing from this rule.[3] Plaintiff's letters and pleadings seem to allege fraud or duress.[4] None of his allegations, even if true, relate to the sessions with Judge Kay nor do they negate the fact that he read and signed the agreement in front of Judge Kay on April 22, 2008, and reaffirmed his agreement to it (after making minor changes) on May 7, 2008. A claim of fraudulent inducement fails when the signed document sets forth the obligations of the parties. *Weaver v. Bratt*, 421 F.Supp.2d 25, 34 (D.D.C. 2006). The Settlement Agreement here clearly spells out Mr. Johnson's obligations. The events that occurred prior to the sessions with Judge Kay, wherein the Settlement Agreement was actually reviewed, revised and signed, are not relevant to whether there was any fraud in the procurement of the Agreement. Mr. Johnson can hardly be asserting that a judicial officer would turn a blind eye to fraud on the part of counsel during the mediation sessions. The Settlement Agreement itself provides that Mr. Johnson was entering it voluntarily, "without duress, fraud, coerion or compulsion." Exhibit B, Paragraph 9.

Plaintiff was fully aware of the contents of what he was signing. Judge Kay gave the Plaintiff not one, but two opportunities to read and consider whether to sign the Settlement Agreement. Thus, there can be no dispute about whether the parties have entered into a binding agreement. There is no allegation that Plaintiff did not know what was in the Settlement Agreement he signed before the Judge. There is no allegation that any provision of that Settlement Agreement was misrepresented to him. There is no evidence that anyone misrepresented the contents of the Settlement Agreement that he reviewed and signed in front

---

[3] Where plaintiff did not show a relationship between her allegations of threats and the circumstances under which she actually signed the agreement she failed to state a prima facie claim of duress.. *Weaver*. at 34. Thus. where there is no dispute as to the existence of the agreement, there is no basis for holding an evidentiary hearing. *Autera v. Robinson*, 419 F.2d 1197, 1203 (D.C. Cir. 1969). Judge Kay retained the signed original agreement between the parties, thus there is no dispute as to its existence.
[4] In addition, Plaintiff has not alleged unverified facts sufficient to meet the heightened standard for pleading fraud in relation to his signing of the Settlement Agreement. *See* Fed. R. Civ. Pro. 9(a).

of the Judge. There is no evidence of duress. He was given ample time to review the contents and, in fact, requested changes to the contents. The Settlement Agreement was a compromise freely entered into by both parties before Judge Kay. After signing it on April 22, 2008, Mr. Johnson met again with Judge Kay on May 7, 2008, and expressed to the Judge his continuing concerns about agreeing to the confidentiality paragraph. After obtaining changes in the language of the Settlement Agreement to address his concerns, he again affirmed his agreement to the Settlement Agreement.

## Conclusion

The Defendant, Penn Camera Exchange, Inc., respectfully requests that this Court affirm its dismissal of the complaint with prejudice, deny Plaintiff's request to set aside the Settlement Agreement, direct the parties to abide by the terms of the Settlement Agreement, including but not limited to directing Defendant to pay the money to Mr. Johnson as called for in the Settlement Agreement, and award Penn Camera such other relief as this Court deems just and proper.

PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG, EIG & COOPER, CHARTERED


By         /s/
Hope B. Eastman, Bar No. 55517
4800 Hampden Lane, 7th Floor
Bethesda, MD  20814
(301) 951-9326
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 1st day of August, 2008, a true copy of the foregoing Defendant's Opposition to Plaintiff's Request to Reinstate Lawsuit was electronically filed pursuant to the system of the United States District Court for the District of Columbia and that the same will be mailed to:

    Mr. Joel Johnson
    5430 85th Avenue
    Hyattsville, MD 20784

                                                                    /s/
                                    Hope B. Eastman, Bar No. 55517

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOEL JOHNSON, JR.            )
        Plaintiff,      )
                                )
v.                           ) Civil Action No. 07-1175 (CKK)
                                )
PENN CAMERA EXCHANGE         )
        Defendant.      )
                                )

## DECLARATION OF MAGISTRATE JUDGE ALAN KAY

1. On March 20, 2008, the trial court in the above referenced civil action referred the case for mediation to the Declarant. The parties and their counsel initially met with me on April 22, 2008 for mediation. During the course of the mediation, Mr Karl Carter, Mr Johnson's counsel, advised me that the parties had previously discussed settlement and generally agreed on most issues. They had agreed on a sum of money to be paid to the Plaintiff to settle and dismiss the case filed by Plaintiff. Certain conditions set forth in the agreement were discussed at length by the parties and their counsel, in my presence, specifically confidentiality, a neutral reference, and non-disparagement. The discussion centered on clarifying the latter issues and the parties were discussing language of a proposed settlement agreement that had been provided to Mr. Carter. At the conclusion of the discussion both parties and counsel agreed to execute the agreement (hereinafter, the "Settlement Agreement" or the "Agreement.") Prior to Mr. Johnson signing the Agreement I specifically asked him if he had read the Agreement and did he now understand it and was he signing voluntarily. He said he was and signed the Agreement in my presence. I retained the original of the Settlement Agreement, made copies for the parties and they left chambers. Thereafter I advised the trial court that the case had settled and the parties

would file the required paperwork within a few days.

2. On May 2, 2008, the trial judge faxed me three letters that had been sent to her by Mr. Johnson. In one letter, sent on or about April 29, 2008, he stated that :"Penn Camera has changed the agreement after it was signed * * * *"; and in another letter he asked "[w]hy have they not paid the settlement amount as promised." At the request of the parties, a second mediation session was scheduled with the undersigned on May 7, 2008.

3. Because Mr. Johnson had indicated in one of his letters to the trial judge that the Defendant had not paid the settlement amount as promised. I contacted Ms. Eastman, Defendant's counsel, and asked her if she could bring the settlement payment checks to the May 7, 2008 mediation session in the event that the apparent concerns of Mr. Johnson could be resolved.

4. A second mediation session took place on May 7, 2008. Shortly after the concerns of Mr. Johnson were discussed, Mr. Johnson and Mr. Carter asked to be excused briefly and they adjourned to meet privately in a jury room. They returned to my chambers and Mr. Carter announced that the Plaintiff was now satisfied with the signed April 22, 2008 Settlement Agreement. I specifically asked Mr. Johnson if he had gone over the Settlement Agreement with his attorney and did he now fully understand the Agreement. He was somewhat hesitant and I then asked him if he would like to take some more time to read over the agreement with his attorney. He said he would. I then told Mr. Johnson and Mr. Carter to stay at my conference table in chambers and take whatever time they needed to carefully go over the Agreement. I left

them at the table and went to my desk briefly and then went out of my office to speak to my law clerk on other matters. When I returned Mr. Carter said that Mr. Johnson was satisfied with the Agreement as signed with a minor modification. There ensued a discussion between Mr. Carter and Ms Eastman about the clarity of one of the confidentiality provisions. It was decided that with a minor change to Paragraph 12 of the Agreement the concerns of the parties would be resolved. Handwritten changes were made to the Settlement Agreement and both counsel and Mr. Johnson initialed the changes in my presence. Mr. Johnson was asked by me if he understood the Agreement and was satisfied with the Agreement. He responded that he was.

     5. Ms. Eastman placed the checks on the table and was preparing to tender them when Mr. Johnson said he wanted to say something. He stated that he had written an article about discrimination in America which he was planning on publishing and that he had written about his experiences of discrimination and his difficulties with Penn Camera. Ms Eastman expressed her concern that publishing such an article could be violative of the Settlement Agreement. After some further discussion I suggested that before any concerns be expressed on whether or not any language in Mr. Johnson's article would violate any of the provisions of the Settlement Agreement, a copy of the reference to Penn Camera in Mr. Johnson's article be sent to Ms Eastman and she would then make a determination of the import of any statement expressed by Mr. Johnson. It was agreed that Mr. Johnson through Mr. Carter would provide Ms Eastman with a copy of the article. Ms Eastman said she would defer tendering the checks until she had read the article. The session ended with the understanding that Mr. Carter would send Ms. Eastman a copy of the article promptly.

6. I am over eighteen (18) years of age and have personal knowledge of the matters testified to herein. I do solemnly declare and affirm under the penalties of perjury of the laws of the United States and the District of Columbia and upon personal knowledge that the contents of the foregoing declaration are true.

Dated: August 1, 2008

_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE

SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made and entered into by and between Joel Johnson (hereinafter "Johnson") and Penn Camera Exchange, Inc. (Hereinafter "Penn Camera").

RECITALS

WHEREAS, Johnson was employed with Penn Camera beginning in May 1999;

WHEREAS, due to a change in technology Penn Camera determined it was necessary to reorganize its E6 processing department;

WHEREAS, as a result of the reorganization, Johnson's position was eliminated and thus, his employment was terminated;

WHEREAS, Johnson filed a lawsuit (Case No. 07-cv-01175) in the United States District Court for the District of Columbia challenging his termination; and

WHEREAS, the parties wish to resolve all disputes and disagreements existing between them without admissions of liability and without resort to further litigation.

NOW THEREFORE, for and in consideration of the mutual promises set forth below, and for other good and valuable consideration as stated herein, the receipt and sufficiency of which are hereby acknowledged by each party hereto, it is agreed as follows:

1. **Recitals**. The Recitals are hereby incorporated by reference into this Agreement.

2. **Confidentiality**. This Agreement and its terms shall be confidential and shall be disclosed only as necessary to implement its terms or as required by law. Johnson agrees that the terms of this Agreement are confidential and agrees not to disclose the fact of the Agreement, or any of its financial or other terms, to any person other than a spouse (or, in the absence of a spouse, to one immediate family member) or an attorney for the purpose of seeking legal advice regarding this Agreement.

3. **Payment**. In full and complete satisfaction of all claims arising out of or related to Johnson's employment with Penn Camera, termination of his employment with Penn Camera and claims asserted in the captioned Johnson v. Penn Camera, Case No. 07-cv-01175, Penn Camera shall pay Johnson the total amount of Thirteen Thousand Five Hundred Dollars ($13,500) less customary withholding and legally required deductions. No payments shall be made, however, until the expiration of seven (7) days following the execution of this Agreement by Johnson.

4. **Dismissal of Case**. Upon the effective date of this Agreement, Johnson will execute a stipulation of dismissal, dismissing Case No. 07-cv-01175, currently pending in the United States District Court for the District of Columbia, with prejudice, and will provide a copy to

his counsel for transmittal to Penn Camera's counsel. Thereafter, assuming the seven-day revocation period has passed, Penn Camera will pay the amount set forth in paragraph 3.

5. **Release by Johnson**. In further consideration of the payments described above, Johnson waives any and all claims arising out of his relationships with Penn Camera. Johnson waives any and all claims for himself and his heirs, representatives, successors and assigns, releases and forever discharges Penn Camera, its owners, officers, employees, agents, successors and assigns from any and all claims, known or unknown, that he has or may have relating to or arising out of, directly or indirectly, his relationships with Penn Camera. This general release:

- covers claims that have accrued by the effective date of this Agreement, whether known or unknown.

- includes release from complaints, allegations and/or legal pursuits that encompass however are not limited to, actions under federal, state or local employment and/or civil laws and regulations. Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act, the Rehabilitation Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), the District of Columbia wage and hour and wage payment and collection law and any other similar federal, state or local statute are among the laws and regulations covered by this release of claims.

- applies to claims based on theories of breach of contract or tort (wrongful act, damage or injury for which a civil suit may be brought), whether based in common law (law based on court decisions, on the doctrines implicit in those decisions, and on customs and usages), statutes or otherwise.

- covers claims relating to compensation, wages, bonuses, commissions, sick pay, or other benefits.

- applies to any claims arising out of any other federal, state or local law relating to employment, compensation, employee benefits, whistleblowers, the termination of employment, fraud, defamation, invasion of privacy, violation of public policy, promissory estoppel, or *quantum meruit*.

- applies to any claims arising out of any other federal, state or local law relating to employment, compensation, employee benefits or the termination of employment.

- is executed, on Johnson's part, on behalf of himself and any of his heirs, representatives, successors, and assigns.

- releases both Penn Camera and its directors, officers, employees, agents, successors and assigns from all covered liability.

THIS IS A GENERAL RELEASE. Johnson represents that he has been and continues to be represented by counsel. This offer will remain open for twenty-one (21) days from Johnson's receipt hereof, but withdrawn if he has not signed and returned this Agreement to Penn Camera's counsel, Hope B. Eastman, by that time. After Johnson has signed and delivered this Agreement to Ms. Eastman, he will have seven (7) days to revoke his signature by written communication to Ms. Eastman (the "Revocation Period"). If Penn Camera's counsel has not received written revocation by the end of the Revocation Period, Johnson will be deemed to have ratified this Agreement and it becomes effective and the Payment will be made by Penn Camera if all other conditions and terms of this Agreement have been met.

6. **Statements**. Penn Camera agrees that it will provide Johnson with a neutral reference, confirming only his dates of employment. Johnson agrees that he will make no statements, written or oral, or take any actions which are disparaging or harmful to the reputation and/or interests of Penn Camera or its employees, directors, officers, or members, including but not limited to refraining from making any such disparaging statements to any of Penn Camera's clients, customers, partners, joint venture partners or other such affiliates. Johnson further agrees that he will cease all communication with any employee of Penn Camera on any matter relating to the business of Penn Camera or his employment. In the event such a communication is made to anyone, including but not limited to the media, public interest groups and publishing companies, it will be considered a material breach of the terms of this Agreement and Johnson will be required to reimburse Penn Camera for any and all compensation and benefits paid under the terms of this Agreement, less $100, and Penn Camera shall be freed from the obligation to provide Johnson with a neutral reference. Johnson also agrees that he will not encourage or incite other current or former employees of Penn Camera to disparage or assert any complaint, claim or charge, or to initiate any legal proceeding, against Penn Camera.

7. **Penn Camera Store Locations**. Johnson agrees that he will refrain from trespassing on or defacing any location where Penn Camera maintains a facility, including but not limited to the store located on E Street in the District of Columbia as well as any of the other Penn Camera stores during business hours or otherwise. He also agrees that he will refrain from placing anything on any of the walls, windows, or other locations at any of the stores.

8. **Return of Property.** Under the terms of this Agreement, Johnson will return all Penn Camera Property and all Penn Camera Confidential Information in his possession. The term "Penn Camera Property" includes but is not limited to credit cards, computer hardware and software, audio tapes, keys, building access cards, signature stamps and/or any other property of Penn Camera or any of its customers received or prepared by Johnson for Penn Camera or one of Penn Camera's customers. The term "Confidential Information" specifically includes but is not limited to all passwords, access codes, account identification information, customer lists, vendor lists, information regarding Penn Camera's customers, sources of customers, marketing plans, personnel information, competition strategies, trade secrets, existing and

proposed new products and services, corporate documents, Penn Camera or customer files and other internal memoranda. The term "Confidential Information" applies to all covered information, whether in electronic or other format. Johnson agrees that he will not disclose any Penn Camera Information, including information about the officers, employees, customers, or other agents of Penn Camera, to any third person. Johnson agrees that he will make no copies and will not retain any copies of, or excerpts from such Confidential Information.

9. **Representation and Warranties**. Johnson acknowledges and expressly represents and warrants that (i) prior to signing this Agreement he has read the Agreement, understood its terms, and has been represented by legal counsel of his choice; (ii) this Agreement is a compromise freely and voluntarily entered into by him, upon advice of and consultation with his counsel, and without duress, fraud, coercion or compulsion; (iii) there has been no assignment of any claims against any of the individuals or entities released under this Agreement; (iv) no representation, promise or inducement has been made other than as set forth in this Agreement, and that he enters into this Agreement without reliance upon any other representation, promise or inducement not set forth herein.

10. **Non-Interference.** Nothing in this Agreement shall interfere with Johnson's right to file a charge or complaint with, or from participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission (EEOC), the Department of Labor, or any other governmental agency. However, the consideration provided to Johnson in this Agreement shall be the sole relief provided to Johnson for the claims released by Johnson herein and Johnson will not be entitled to recover and agrees to waive any monetary benefits or recovery against Penn Camera in connection with any such charge or complaint without regard to who has brought such complaint or charge.

11. **No Admission.** This Agreement shall not be deemed an admission of liability, which Penn Camera expressly denies, or of a violation of any applicable law, rule, regulation or order, of any kind.

12. **Remedies**. Johnson acknowledges that if he materially breaches or threatens to materially breach the obligations he assumes under this Agreement, including but not limited to the Johnson's confidentiality obligations and his obligations to make no statements, and stay away from Penn Camera's employees and stores, Penn Camera shall be entitled to injunctive relief. Penn Camera's obligations to pay the monies under Paragraph 3 and provide Johnson a neutral reference shall immediately cease and Penn Camera shall be entitled to all other remedies allowed in law or equity, including but not limited to the return of any payments made to Johnson under this Agreement, less $100. Should Penn Camera have to sue to enforce the provisions of this Agreement, Johnson agrees that he will be responsible for Penn Camera's reasonable attorneys' fees.

13. **Miscellaneous**. The interpretation of this Agreement shall be governed by the laws of the State of Maryland in effect at the time this Agreement is executed. If the release provisions of this Agreement are held invalid by a court of competent jurisdiction, then the Agreement may be terminated by Penn Camera at its option and all monies paid under this Agreement must be repaid to Penn Camera. In addition, if the release provision is invalidated

due to legal action by Johnson, he shall pay Penn Camera its reasonable attorney's fees incurred in the defense of the release provision. If any provision of this Agreement is determined to be illegal, invalid or unenforceable, the validity or enforceability of the other provisions shall not be affected. This Agreement sets forth the entire Agreement between the Parties hereto, and fully supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof.

14. <u>Jury Waiver.</u> The parties expressly waive any right to a trial by jury for all matters or actions arising under this Agreement or otherwise related to Johnson's employment with Penn Camera.

15. <u>Effective Date</u>. The Effective Date of this Agreement shall be the last date upon which it is signed by the Johnson and Penn Camera.

   IN WITNESS WHEREOF, the parties hereunto set their hands and seals on the dates set forth hereafter.

_____  
Joel M. Johnson

4-22-08  
Date

_____  
Penn Camera Exchange, Inc.

4/22/08  
Date

proposed new products and services, corporate documents, Penn Camera or customer files and other internal memoranda. The term "Confidential Information" applies to all covered information, whether in electronic or other format. Johnson agrees that he will not disclose any Penn Camera Information, including information about the officers, employees, customers, or other agents of Penn Camera, to any third person. Johnson agrees that he will make no copies and will not retain any copies of, or excerpts from such Confidential Information.

9. **Representation and Warranties**. Johnson acknowledges and expressly represents and warrants that (i) prior to signing this Agreement he has read the Agreement, understood its terms, and has been represented by legal counsel of his choice; (ii) this Agreement is a compromise freely and voluntarily entered into by him, upon advice of and consultation with his counsel, and without duress, fraud, coercion or compulsion; (iii) there has been no assignment of any claims against any of the individuals or entities released under this Agreement; (iv) no representation, promise or inducement has been made other than as set forth in this Agreement, and that he enters into this Agreement without reliance upon any other representation, promise or inducement not set forth herein.

10. **Non-Interference.** Nothing in this Agreement shall interfere with Johnson's right to file a charge or complaint with, or from participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission (EEOC), the Department of Labor, or any other governmental agency. However, the consideration provided to Johnson in this Agreement shall be the sole relief provided to Johnson for the claims released by Johnson herein and Johnson will not be entitled to recover and agrees to waive any monetary benefits or recovery against Penn Camera in connection with any such charge or complaint without regard to who has brought such complaint or charge.

11. **No Admission**. This Agreement shall not be deemed an admission of liability, which Penn Camera expressly denies, or of a violation of any applicable law, rule, regulation or order, of any kind.

12. **Remedies**. Johnson acknowledges that if he materially breaches or threatens to materially breach the obligations he assumes under this Agreement [under paragraphs 6 & 7 of this Agreement], including but not limited to the Johnson's confidentiality obligations and his obligations ~~to make no statements, and stay away from Penn Camera's employees and stores~~, Penn Camera shall be entitled to injunctive relief. Penn Camera's obligations to pay the monies under Paragraph 3 and provide Johnson a neutral reference shall immediately cease and Penn Camera shall be entitled to all other remedies allowed in law or equity, including but not limited to the return of any payments made to Johnson under this Agreement, less $100. Should Penn Camera have to sue to enforce the provisions of this Agreement, Johnson agrees that he will be responsible for Penn Camera's reasonable attorneys' fees.

13. **Miscellaneous**. The interpretation of this Agreement shall be governed by the laws of the State of Maryland in effect at the time this Agreement is executed. If the release provisions of this Agreement are held invalid by a court of competent jurisdiction, then the Agreement may be terminated by Penn Camera at its option and all monies paid under this Agreement must be repaid to Penn Camera. In addition, if the release provision is invalidated

proposed new products and services, corporate documents, Penn Camera or customer files and other internal memoranda. The term "Confidential Information" applies to all covered information, whether in electronic or other format. Johnson agrees that he will not disclose any Penn Camera Information, including information about the officers, employees, customers, or other agents of Penn Camera, to any third person. Johnson agrees that he will make no copies and will not retain any copies of, or excerpts from such Confidential Information.

9. **Representation and Warranties**. Johnson acknowledges and expressly represents and warrants that (i) prior to signing this Agreement he has read the Agreement, understood its terms, and has been represented by legal counsel of his choice; (ii) this Agreement is a compromise freely and voluntarily entered into by him, upon advice of and consultation with his counsel, and without duress, fraud, coercion or compulsion; (iii) there has been no assignment of any claims against any of the individuals or entities released under this Agreement; (iv) no representation, promise or inducement has been made other than as set forth in this Agreement, and that he enters into this Agreement without reliance upon any other representation, promise or inducement not set forth herein.

10. **Non-Interference.** Nothing in this Agreement shall interfere with Johnson's right to file a charge or complaint with, or from participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission (EEOC), the Department of Labor, or any other governmental agency. However, the consideration provided to Johnson in this Agreement shall be the sole relief provided to Johnson for the claims released by Johnson herein and Johnson will not be entitled to recover and agrees to waive any monetary benefits or recovery against Penn Camera in connection with any such charge or complaint without regard to who has brought such complaint or charge.

11. **No Admission**. This Agreement shall not be deemed an admission of liability, which Penn Camera expressly denies, or of a violation of any applicable law, rule, regulation or order, of any kind.

12. **Remedies**. Johnson acknowledges that if he materially breaches or threatens to materially breach the obligations he assumes under this Agreement [under paragraph 6 & 7 of this Agreement], including but not limited to the Johnson's confidentiality obligations and his obligations ~~to make no statements, and stay away from Penn Camera's employees and stores~~, Penn Camera shall be entitled to injunctive relief. Penn Camera's obligations to pay the monies under Paragraph 3 and provide Johnson a neutral reference shall immediately cease and Penn Camera shall be entitled to all other remedies allowed in law or equity, including but not limited to the return of any payments made to Johnson under this Agreement, less $100. Should Penn Camera have to sue to enforce the provisions of this Agreement, Johnson agrees that he will be responsible for Penn Camera's reasonable attorneys' fees.

13. **Miscellaneous**. The interpretation of this Agreement shall be governed by the laws of the State of Maryland in effect at the time this Agreement is executed. If the release provisions of this Agreement are held invalid by a court of competent jurisdiction, then the Agreement may be terminated by Penn Camera at its option and all monies paid under this Agreement must be repaid to Penn Camera. In addition, if the release provision is invalidated