## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOEL JOHNSON, JR.

      Plaintiff,

      v.

PENN CAMERA EXCHANGE,

      Defendant.

Civil Action No. 07-1175 (CKK)

## MEMORANDUM OPINION
(October 17, 2008)

The above-captioned employment discrimination case was originally filed by Plaintiff

Joel Johnson, Jr., through counsel, against his former employer, Defendant Penn Camera

Exchange ("Penn Camera").  Following Penn Camera's Answer to Mr. Johnson's Complaint, the

parties engaged in extensive settlement discussions that ultimately culminated in a settlement

agreement signed by both parties and their counsel in the presence of Magistrate Judge Alan Kay.

The case was thereafter dismissed with prejudice by this Court on May 20, 2008.  Mr. Johnson,

now proceeding *pro se*, seeks to rescind the parties' agreement and reinstate his case, and has

filed several motions to that end.  *See* Pl.'s [17] Motion to rescind the parties' settlement

agreement, [18] Motion to reinstate his lawsuit, and [22] Motion for a court hearing.[1]  The Court

---

[1] These motions were submitted as letters that the Court allowed to be filed on the public docket.  The Court notes that Mr. Johnson submitted other letters to the Court both before and after the parties entered into their settlement agreement.  The Court forwarded the letters that appeared to relate to the parties' settlement negotiations to Magistrate Judge Kay, to whom the parties' mediation had been assigned.  The Court placed the other letters that it received on the public docket, and in some instances placed under seal the letters' exhibits when they appeared to contain attorney-client communications or settlement discussions that are not ordinarily filed on the public docket.

construed Mr. Johnson's motions as seeking relief under Federal Rule of Civil Procedure 59(e) or 60(b), and ordered Mr. Johnson to submit a legal brief explaining why the Court should vacate its Order dismissing this case.  Plaintiff filed a response that was filed on the docket on June 20, 2008.  *See* Pl.'s Resp. at 1-3.  Penn Camera filed an Opposition on August 1, 2008, which included a declaration from Magistrate Judge Kay describing the circumstances of the parties' settlement meetings and their execution of an agreement.  *See* Def.'s Opp'n at 1-7.  Mr. Johnson's former attorney, Karl Carter, also submitted a Response opposing Mr. Johnson's motions on August 6, 2008.  *See* Counsel's Resp. at 1-3.  Mr. Johnson submitted a Reply that was docketed on August 25, 2008.  *See* Pl.'s Reply at 1-4  After a thorough review of these submissions, including the attachments thereto, applicable case law, statutory authority, and the record of the case as a whole (including Mr. Johnson's letters and exhibits that he sent to the Court), the Court shall DENY Plaintiff's [17] Motion to rescind the parties' settlement agreement, DENY Plaintiff's [18] Motion to reinstate his lawsuit, and DENY Plaintiff's [22] Motion for a court hearing, for the reasons that follow.

## I. BACKGROUND

The Court shall set forth the background relevant to the instant Motions by relying extensively on Magistrate Judge Kay's Declaration, which stands uncontroverted.  On March 20, 2008, the Court referred this case to Magistrate Judge Kay for mediation.  *See* Min. Order dated Mar. 20, 2008.  The parties and their counsel initially met with Magistrate Judge Kay on April 22, 2008.  Def.'s Opp'n, Ex. 1 ¶ 1 (hereinafter "Decl. of Magistrate Judge Kay").  Mr. Carter advised Magistrate Judge Kay that "the parties had previously discussed settlement and generally agreed on most issues," including the sum of money to be paid to Plaintiff to settle and dismiss

the case.  *Id.*  At the meeting, certain provisions of the agreement were discussed in the presence

of Magistrate Judge Kay, including confidentiality, a neutral reference, and non-disparagement.

*Id.*  At the conclusion of the parties' discussion, "both parties and counsel agreed to execute the

agreement."[2]  *Id.*  Magistrate Judge Kay recalls that Mr. Johnson indicated that he read and

understood the agreement and voluntarily signed it:

> I specifically asked him if he had read the Agreement and did he now understand
> it and was he signing voluntarily.  He said he was and signed the Agreement in my
> presence.  I retained the original of the Settlement Agreement, made copies for the
> parties and they left chambers.

*Id.*  Mr. Johnson's attorney, Mr. Carter, has a similar recollection of Mr. Johnson's decision to

sign the Settlement Agreement:

> the Plaintiff signed the agreement before Counsel and Magistrate [Judge] Kay.
> No pressure was applied to the Plaintiff nor was there any collusion between
> counsel for the Plaintiff and Defendant.  Plaintiff signed the document of his own
> free will to the best of observations of Counsel.  When Plaintiff signed the
> document he was asked by the Magistrate if he was familiar with the document
> and he confirmed that he was familiar with the document and had discussed it
> with counsel.

[28] Counsel's Resp. to Pl.'s Mot. at 2.

Magistrate Judge Kay notified this Court that the parties had reached a settlement on

April 22, 2008.  At the request of the parties, the Court dismissed the case without prejudice until

May 20, 2008, after which the case would be dismissed *with* prejudice (allowing the parties this

brief period to finalize any arrangements associated with their agreement).  *See* Min. Order dated

---

[2] For ease of reference, the Court shall refer to this agreement as the "Settlement
Agreement" throughout this Memorandum Opinion.

April 22, 2008.[3]  Mr. Johnson thereafter sent letters to this Court describing his dissatisfaction

with the Settlement Agreement.  The letters were forwarded to Magistrate Judge Kay because

they related to the parties' settlement negotiations and did not appear to be appropriate for filing

on the public docket.  At the request of the parties, Magistrate Judge Kay scheduled another

meeting for May 7, 2008.  Mag. J. Kay Declaration ¶ 2.

During the second meeting with the parties on May 7, 2008, Mr. Johnson's concerns with

the Settlement Agreement were discussed.  *Id.* ¶ 4.  After an adjournment for a private meeting

between Mr. Johnson and Mr. Carter, it was reported to Magistrate Judge Kay that Mr. Johnson

was satisfied with the Settlement Agreement.  *Id.*  Magistrate Judge Kay then took steps to

ensure that was the case:

> I specifically asked Mr. Johnson if he had gone over the Settlement Agreement
> with his attorney and did he now fully understand the Agreement.  He was
> somewhat hesitant and I then asked him if he would like to take some more time
> to read over the agreement with his attorney.  He said he would.  I then told Mr.
> Johnson and Mr. Carter to stay at my conference table in chambers and take
> whatever time they needed to carefully go over the Agreement.

*Id.* at 4.  After another brief interlude, Magistrate Judge Kay returned and Mr. Carter stated that

Mr. Johnson was satisfied with the Settlement Agreement subject to one minor modification to a

confidentiality provision.  *Id.*  The parties decided on a minor change to Paragraph 12 of the

Agreement, which was handwritten into the Settlement Agreement and was initialed by Mr.

Johnson (as well as counsel for the parties) in Magistrate Judge Kay's presence.  *Id.*  Again,

Magistrate Judge Kay asked Mr. Johnson "if he understood the Agreement and was satisfied with

---

[3] The Court had previously issued a similar order that dismissed the case without
prejudice during the period of the parties' settlement negotiations.  The period of dismissal
without prejudice was extended until May 20, 2008, as reflected in the text above.

the Agreement. He responded that he was." *Id.* Mr. Johnson's counsel has a similar recollection

of the second meeting with Magistrate Judge Kay:

> The Judge had him read [the Settlement Agreement] over. [Mr. Johnson]
> reviewed the document and made changes to the document which were initialed
> by [Mr. Johnson]. [Mr. Johnson] told the Judge he was agreeing to it. During the
> course of the discussion with the Magistrate[,] Plaintiff clearly indicated that he
> agreed to the settlement.

Counsel Resp. to Pl.'s Mot. at 2-3.[4]

Mr. Johnson submitted his Motion to rescind the Settlement Agreement in a letter dated

May 21, 2008. *See* Pl.'s[17] Mot. at 1. The motion alleged that he had been induced into signing

the agreement through "intimidation, deceit, and fraud," for two reasons. *Id.* First, Mr. Johnson

explained that he was threatened by Penn Camera's attorneys in a letter dated March 5, 2008,

which was an "attempt at intimidation to force [him] to except [sic] [Penn Camera's] out-of-

court settlement offer." *Id.* Second, Mr. Johnson explained that he never actually signed the

Settlement Agreement because the attorneys had colluded to "deliberately substitute[] the

signature page from the defendant's settlement offer," thereby making him think he was signing a

different agreement. *Id.* Mr. Johnson's Motion to rescind the Settlement Agreement also

requested reinstatement of his lawsuit. *Id.* He nevertheless also filed a separate Motion to

reinstate his lawsuit, filed by letter dated June 6, 2008, which contained a similar allegation of

---

[4] Although Mr. Johnson does not raise any issues in his Motions concerning the tendering
of payment by Penn Camera, Magistrate Judge Kay's declaration explains that payment was not
tendered during the May 7, 2008 meeting because of an issue concerning confidentiality. *See*
Mag. J. Kay Declaration ¶ 5. Mr. Johnson stated that he had "written an article about
discrimination in America which he was planning on publishing and that he had written about his
experiences of discrimination and his difficulties with Penn Camera." *Id.* The parties agreed
that Mr. Johnson through Mr. Carter would provide Ms. Eastman, Penn Camera's attorney, with
a copy of the Article. *Id.* Ms. Eastman would defer tendering the settlement checks until she had
read the article. *Id.*

attorney collusion.  *See* Pl.'s [18] Mot. at 1.  A third Motion was filed by letter dated June 20,

2008, which asked the Court to hold a hearing on his motions.  *See* Pl.'s [22] Mot. at 1.  On June

11, 2008, the Court gave notice to the Parties that it would construe Mr. Johnson's Motions

under the framework of Federal Rule of Civil Procedure 59(e) or 60(b), and asked for legal

briefing in that context.  *See* [16] Mem. Op. at 1-2 (Jun. 11, 2008).

## II.  LEGAL STANDARD

Although none of the parties address the legal standard that applies to Mr. Johnson's

motions, the Court finds that Federal Rule of Civil Procedure 59(e) supplies the appropriate

standard.  Rule 59(e) authorizes the Court to consider "[a]ny motion to alter or amend a

judgment," provided it is filed no later than 10 days after entry of the judgment.  Fed. R. Civ. P.

59(e).  *See also United States v. Pollard*, 290 F. Supp. 2d 153, 156 (D.D.C. 2003) ("a motion for

reconsideration is treated as a '[Fed. R. Civ. P.] 59(e) motion if filed within 10 days of entry of

the challenged order and as a Rule 60(b) motion if filed thereafter'") (quoting *United States v.

Clark*, 984 F.2d 31, 32 (2d Cir. 1993)).  Because this case was dismissed with prejudice on May

20, 2008, and Plaintiff filed his first motion asking for the Court to rescind the parties' settlement

agreement and reinstate his case on May 27, 2008, the Court finds that Plaintiffs' motions are

properly viewed under Rule 59(e).

Courts have "considerable discretion in ruling on a Rule 59(e) motion," *Piper v. U.S.

Dep't of Justice*, 312 F. Supp. 2d 17, 20 (D.D.C. 2004), but such motions are "disfavored and

relief from judgment is granted only when the moving party establishes extraordinary

circumstances."  *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).

Generally, relief under Rule 59(e) is limited to situations where "there is an intervening change

of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.'" *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curium)).

## III. DISCUSSION

Mr. Johnson's response to the Court's June 11, 2008 Order requesting legal briefing reiterates the two allegations contained in his Motions; namely, that (1) Mr. Johnson was intimidated by a letter sent to him by Penn Camera's lawyers, and (2) counsel in this case colluded to switch the signature page of the Settlement Agreement such that Mr. Johnson believed he was actually signing a settlement agreement that he had drafted and not the one retained by the Magistrate Judge.  The Court shall address these arguments in turn.

The first argument relates to a cease and desist letter sent by the law firm Paley Rothman on behalf of its client, Penn Camera, on March 5, 2008.  *See* Pl.'s [21] Resp., Ex. 4 at 1.  The letter explains that Penn Camera had requested through Mr. Carter that Mr. Johnson stay away from Penn Camera stores.  *Id.*  The letter indicated that, despite that request, Mr. Johnson continued to show up at Penn Camera locations, frightening employees, and posting materials on Penn Camera's windows:

> you came to the store and were frightening employees.  It now appears that you
> have placed three flyers on the windows of the E Street store . . . [at] this time, we
> more formally demand that you cease and desist from trespassing on the E Street
> property or any of the other Penn Camera stores during business hours or
> otherwise, from communicating with employees, and from placing anything on
> any of the walls, windows, or other locations at any of the stores.

*Id.*  Both Mr. Johnson and Mr. Carter *confirm* that the allegations in Paley Rothman's cease and desist letter are accurate.  Mr. Johnson's Motion explains that, between July 2007 and January

7

2008, he "had been at [Penn Camera's] E street store about 11 times," *see* Pl.'s [17] Mot., and

Mr. Carter's Response explains that "Plaintiff placed a sign on the windows of the Defendant

alleging that Defendant was guilty of discrimination[,] listing the case number of the instant

case."  Counsel's Resp. to Pl.'s Mot. at 1.

Although Mr. Johnson claims that this cease and desist letter sought to intimidate him

into settling his claims with Penn Camera, the Court finds that argument to be without merit.

First, the letter was directed toward Mr. Johnson's conduct at Penn Camera's stores and does not

discuss the lawsuit brought by Mr. Johnson or the settlement discussions occurring between the

parties.  The letter could not rationally be viewed, therefore, as an attempt to improperly persuade

Mr. Johnson into settling his claims.  Second, all of the evidence in the record indicates that Mr.

Johnson entered into the Settlement Agreement voluntarily and without undue pressure.  The

cease and desist letter was sent on March 5, 2008, over one month prior to the parties' April 22,

2008 meeting with Magistrate Judge Kay where they executed the Settlement Agreement.

Magistrate Judge Kay specifically asked Mr. Johnson if he was signing the agreement

voluntarily, and Mr. Johnson indicated that he was.  Decl. of Magistrate Judge Kay ¶ 1.  The

Settlement Agreement also contained a specific provision indicating that Mr. Johnson was

voluntarily signing it:

> Johnson acknowledges and expressly represents and warrants that . . . this
> Agreement is a compromise freely and voluntarily entered into by him, upon
> advice of and consultation with his counsel, and without duress, fraud, coercion,
> or compulsion . . .

Def.'s Opp'n, Ex. 2 ¶ 9 (4/22/08 Settlement Agreement).  At the meeting with Judge Kay on May

7, 2008, Mr. Johnson similarly informed Magistrate Judge Kay that he read the agreement and

understood it, and raised no issue concerning intimidation based on the cease and desist letter. *See* Mag. J. Kay Decl. ¶ 2.

Absent a showing of fraud or duress, parties are bound by the agreements that they sign, without regard to whether they regret their decisions after the fact. *See Patterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962) ("[o]ne who signs a contract which he has had an opportunity to read and understand is bound by its provisions") (quoting *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cirl 1960)). Based on the record set forth above, the Court finds that there is no evidence that Mr. Johnson's execution of the Settlement Agreement was a product of anything other than his own free will. The Court therefore rejects Mr. Johnson's first argument concerning intimidation and finds that it provides no justification warranting relief under Rule 59(e).

Mr. Johnson's second argument–that counsel in this case colluded to switch the signature page of the Settlement Agreement such that he believed he was actually signing a different agreement–fares no better when considered against the evidence in the record. Mr. Johnson's unsworn allegations do not indicate when he believes a signature page substitution was made, and he has not proffered the Settlement Agreement he thought he was signing to demonstrate that the signature pages were so similar that he would not have recognized the difference between the agreements. Equally problematic for his argument, however, is that he fails to explain how he could have reasonably believed he was signing a different agreement when he reviewed and discussed the Settlement Agreements during each meeting with Magistrate Judge Kay. In particular, during the April 22, 2008 meeting between the parties, Mr. Johnson specifically informed Magistrate Judge Kay that he "read the Agreement" prior to signing it. Decl. of

Magistrate Judge Kay ¶ 1.  Magistrate Judge Kay then retained the original copy of the

Settlement Agreement signed by the parties.  *Id.*

Mr. Johnson again reviewed the Settlement Agreement during the second meeting with

Magistrate Judge Kay, and paradoxically did not raise an issue concerning a "switching" of

signature pages.  Magistrate Judge Kay

> asked Mr. Johnson if he had gone over the Settlement Agreement with his
> attorney and did he now fully understand the Agreement.  He was somewhat
> hesitant and I then asked him if he would like to take some more time to read over
> the agreement with his attorney.  He said he would.  I then told Mr. Johnson and
> Mr. Carter to stay at my conference table in chambers and take whatever time they
> needed to carefully go over the Agreement.

Mag. J. Kay Decl. ¶ 4.  Far from indicating that he had been subject to a fraud, Mr. Johnson then

initialed a minor change in the agreement that the parties had inter-delineated in one of its

provisions.  This change was not on the signature page, but was instead on the second-to-last

page of the agreement.  *See* Def.'s Opp'n, Ex. 3 (5/7/08 Settlement Agreement Modification).

Mr. Johnson fails to explain why he would have agreed to a minor alteration of an agreement that

he had not previously seen and that he now contends was different from what he believed he had

signed originally.[5]  In sum, Mr. Johnson's argument is inconsistent with his answers to

---

[5] In Reply, Mr. Johnson alleges that "[o]nly the signature page was displayed at mediation [in] April 22[,] 2008."  Pl.'s Reply at 3.  This allegation is inconsistent with Magistrate Judge Kay's Declaration stating not only that Mr. Johnson confirmed that he read the Settlement Agreement, but also that the parties discussed its various provisions in his presence.  *See* Decl. of Magistrate Judge Kay ¶ 2.  Further, because Magistrate Judge Kay retained the original version of the Settlement Agreement (which includes all of its pages and not just the signature page), the entire Settlement Agreement was unquestionably present at the April 22, 2008 meeting with Magistrate Judge Kay.  The proposition that Mr. Johnson would not have read anything other than the signature page of the Settlement Agreement when the entire agreement was available at the meeting, discussed in detail, signed by all of the parties and counsel, and after he specifically represented to Magistrate Judge Kay that he had read the agreement, defies reason.

Magistrate Judge Kay's questions about the agreement, at odds with the parties' conduct during the mediation sessions with Magistrate Judge Kay, and does not make sense in the context of the record in this case.  Accordingly, the Court finds that Mr. Johnson has failed to present the extraordinary circumstances necessary to obtain relief under Rule 59(e).

Because the Court finds that Mr. Johnson's arguments were adequately briefed by the parties and that an oral hearing is unnecessary to resolve Mr. Johnson's motions, the Court shall deny Mr. Johnson's request for an oral hearing.  *See* LCvR 78.1 ("[a] party may in a motion or opposition request an oral hearing, but its allowance shall be within the discretion of the court").

## IV.  CONCLUSION

For the reasons set forth above, the Court shall DENY Plaintiff's [17] Motion to rescind the parties' settlement agreement, DENY Plaintiff's [18] Motion to reinstate his lawsuit, and DENY Plaintiff's [22] Motion for a court hearing.  This case shall remain dismissed in its entirety.  An appropriate Order accompanies this Memorandum Opinion.

Date: October 17, 2008


_____*/s/*_____
COLLEEN KOLLAR-KOTELLY
United States District Judge